No. 24-6144

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA, *et al.*,

Plaintiffs – Appellees,

v.

STATE OF OKLAHOMA, *et al.*,

Defendants – Appellants.

On Appeal from the United States District Court
For the Western District of Oklahoma
The Hon. Bernard M. Jones, No. 5:24-cv-511-J

**BRIEF FOR *AMICUS CURIAE* IMMIGRATION REFORM LAW INSTITUTE IN SUPPORT OF DEFENDANTS-APPELLANTS AND FOR REVERSAL**

**MATT A. CRAPO**
**CHRISTOPHER J. HAJEC**
**Immigration Reform Law Institute**
**25 Massachusetts Ave., NW, Suite 335**
**Washington, DC 20001**
**(202) 232-5590**
**mcrapo@irli.org**
**chajec@irli.org**

**Attorneys for *Amicus Curiae***

## STATEMENT OF INTERESTED PERSONS

Pursuant to Fed. R. App. P. 26.1, *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

3) The following entity has an interest in the outcome of this case: Immigration Reform Law Institute.

DATED: September 25, 2024  Respectfully submitted,

/s/ Matt Crapo
Matt A. Crapo
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590

Attorney for *Amicus Curiae*

## TABLE OF CONTENTS

**Page**

STATEMENT OF INTERESTED PERSONS

TABLE OF AUTHORITIES ................................................................................... ii

INTEREST OF AMICUS CURIAE .........................................................................1

INTRODUCTION .....................................................................................................1

ARGUMENT .............................................................................................................4

I.     States retain the authority to regulate immigration under the Constitution subject only to Congress's authority to preempt such regulation ...................4

II.    Congress has not preempted State laws criminalizing illegal entry or reentry and has explicitly recognized that aliens may stipulate to their removal during a criminal trial under State law ..........................................................6

CONCLUSION ........................................................................................................10

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

<u>Page(s)</u>

## CASES

*Arizona v. United States*,
   567 U.S. 387 (2012) .................................................................................. 4, 5

*Ariz. Dream Act Coalition v. Brewer*,
   855 F.3d 957 (9th Cir. 2017) ........................................................................ 1

*DeCanas v. Bica*,
   424 U.S. 351 (1976) .................................................................................... 10

*Kansas v. Garcia*,
   589 U.S. 191 (2020) .................................................................................... 10

*Mayor of New York v. Miln*,
   36 U.S. 102 (1837) ........................................................................................ 5

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
   584 U.S. 453 (2018) ...................................................................................... 4

*Nishimura Ekiu v. United States*,
   142 U.S. 651 (1892) ...................................................................................... 4

*Matter of Silva-Trevino*,
   26 I. & N. Dec. 826 (B.I.A. 2016) ................................................................ 1

*Trump v. Hawaii*,
   585 U.S. 667 (2018) ...................................................................................... 1

*United States v. Texas*,
   599 U.S. 670 (2023) ...................................................................................... 1

*United States v. Texas*,
   2024 U.S. Dist. LEXIS 36721, 2024 WL 861526 (W.D. Tex.,
   Feb. 29, 2024), *stay denied*, 97 F.4th 268 (5th Cir. 2024) ........................... 9

*Wash. All. Tech Workers v. U.S. Dep't Homeland Security*,
  50 F.4th 164 (D.C. Cir. 2022) .................................................................................. 1

## **STATUTES**

8 U.S.C. § 1101(a)(15) ................................................................................................ 5

8 U.S.C. § 1153 .......................................................................................................... 5

8 U.S.C. § 1182 .......................................................................................................... 5

8 U.S.C. § 1227 .......................................................................................................... 5

8 U.S.C. § 1325 ..................................................................................................... 5, 6

8 U.S.C. § 1325(a) ..................................................................................................... 6

8 U.S.C. § 1326 ................................................................................................ 5, 6, 9

8 U.S.C. § 1326(a)(1) ................................................................................................ 7

8 U.S.C. § 1326(a)(2) ................................................................................................ 7

8 U.S.C. § 1326(b) ................................................................................................ 8, 9

House Bill 4156 (codified at Okla. Stat. tit. 21, § 1795) ................................. 3, 6-8

## **MISCELLANEOUS**

Declaration of Independence ..................................................................................... 4

Fed. R. App. P. 29(a)(2) ............................................................................................. 1

# INTEREST OF *AMICI CURIAE*[1]

The Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. For more than twenty years the Board of Immigration Appeals has solicited supplementary briefing, drafted by IRLI staff, from the Federation for American Immigration Reform, of which IRLI is a supporting organization. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *United States v. Texas*, 599 U.S. 670 (2023); *Trump v. Hawaii*, 585 U.S. 667 (2018); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't Homeland Security*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).

# INTRODUCTION

Oklahoma and other States have taken measures to combat unlawful immigration in response to the federal government's ongoing abdication of its duty

---

[1] Pursuant to Fed. R. App. P. 29(a)(2), all parties have consented to the filing of this *amicus* brief. No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

1

to protect States from invasion and to take care that the nation's immigration laws are faithfully executed. Since January 20, 2021, the Biden-Harris administration has purposely facilitated mass illegal entries into this country. It has temporarily paused all removals, gutted immigration enforcement guidelines, terminated the Migrant Protection Protocols (colloquially known as the "Remain in Mexico policy"), halted border wall construction projects, reinstated "catch and release" at the border, weakened asylum requirements, and adopted mass parole programs.

The abdication of both this administration's statutory duty to secure the border and its constitutional obligation to protect the States from invasion resulted in an estimated 5.5 million illegal aliens' crossing the border from inauguration day in 2021 through fiscal year 2022. *FAIR Analysis: 5.5 Million Illegal Aliens Have Crossed our Borders Since Biden Took Office—How is Secretary Mayorkas Still Employed?*, available at: https://www.fairus.org/press-releases/border-security/fair-analysis-55-million-illegal-aliens-have-crossed-our-borders (last visited Sept. 24, 2024). The number of encounters has only increased since. In fiscal year 2023 alone, Customs and Border Protection ("CBP") encountered over 3.2 million aliens, including nearly 2.5 million at the southwest border. CBP, *Nationwide Encounters*, available at: https://www.cbp.gov/newsroom/stats/nationwide-encounters (last visited Sept. 24, 2024). And there have been more than 2.7 million encounters nationwide in fiscal

2

year 2024 to date. *Id.* Eighty-five percent of aliens encountered on the southern border, moreover, are released into the United States. Fox News, *Mayorkas tells Border Patrol agents that 'above 85%' of illegal immigrants released into US: sources*, available at: https://www.foxnews.com/politics/mayorkas-tells-border-patrol-agents-illegal-immigrants-released-into-us-sources (last visited Sept. 24, 2024).

In the absence of any meaningful federal action, the Oklahoma legislature passed and the Governor signed House Bill 4156 ("HB 4156"), which mirrors the federal crimes of illegal entry and reentry. HB 4156 § 2(C)-(D); *see* J.A. 188 ("Effectively, H.B. 4156 criminalizes conduct already proscribed under federal law."). An alien convicted of violating either provision must "leave the state within seventy-two (72) hours following his or her conviction or release from custody, whichever comes later." HB 4156 § 2(C)(1), (2) & (D).

Although HB 4156 parallels the federal criminal offenses for illegal entry and reentry and does not interfere with Congress's power to decide which classes of aliens are admissible or removable, the district court preliminarily enjoined the enforcement of HB 4156 because the court determined that HB 4156 is preempted by federal law. J.A. 187-200. But there is nothing in federal law that suggests that Congress sought to preempt State laws criminalizing illegal reentry. Instead, Congress explicitly recognized that aliens may stipulate to removal during (or not

3

during) a criminal trial under *State* law. This recognition demonstrates that Congress did not intend to preempt State laws under which aliens may be punished for violating federal immigration standards; indeed, Congress gave effect to such laws. Because the district court erred in concluding that HB 4156 is likely preempted by federal law, the Court should reverse the district court and vacate the preliminary injunction.

## ARGUMENT

I. **States retain the authority to regulate immigration under the Constitution subject only to Congress's authority to preempt such regulation.**

"When the original States declared their independence, they claimed the powers inherent in sovereignty—in the words of the Declaration of Independence, the authority 'to do all . . . Acts and Things which Independent States may of right do.'" *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 470 (2018) (quoting Declaration of Independence ¶ 32). Inherent in the sovereignty of an independent State, "and essential to self-preservation," is the power "to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892). "As a sovereign, [Iowa] has the inherent power to exclude persons from its territory, subject only to those limitations expressed in the Constitution or constitutionally imposed by Congress." *Arizona v. United States*,

567 U.S. 387, 417 (2012) (Scalia, J., concurring in part and dissenting in part); *id.* at 418 ("There is no doubt that 'before the adoption of the constitution of the United States' each State had the authority to 'prevent [itself] from being burdened by an influx of persons.'") (quoting *Mayor of New York v. Miln*, 36 U.S. 102, 132-133 (1837)).

Further, as Justice Scalia demonstrated in his opinion in *Arizona*, 567 U.S. at 420-21, the States did not surrender their power to regulate immigration upon entering the Union. *Id.* (noting that the *Miln* Court held that the power to regulate the entrance of foreigners remained with the States following the adoption of the Constitution). Because the States retained the authority to regulate immigration under the Constitution, the States' authority can only be preempted by Congress.

Congress has adopted extensive regulations governing immigration. For example, Congress has defined the classes of aliens who are admissible and removable. *See* 8 U.S.C. §§ 1101(a)(15) (defining classes of nonimmigrant aliens); 1153 (allocating immigrant visas among various classes of aliens); 1182 (defining inadmissible aliens); 1227 (defining deportable aliens). Congress has also criminalized illegal entry and reentry. *Id.* at §§ 1325, 1326. No one questions Congress's power to set nationwide immigration policy, and no State may adopt immigration policies that conflict with federal immigration law. The only question in this case is whether Congress sought to preempt State laws such as HB 4156,

5

which mirrors the federal crimes for illegal entry and reentry under 8 U.S.C. §§ 1325, 1326. As shown below, it has not.

## II. Congress has not preempted State laws criminalizing illegal entry or reentry and has explicitly recognized that aliens may stipulate to their removal during a criminal trial under State law.

HB 4156 mirrors the federal crimes of illegal entry and reentry. HB 4156 makes it a crime for an alien to "willfully and without permission enter[] and remain[] in the State of Oklahoma without having first obtained legal authorization to enter the United States." HB 4156 § 2(B). Congress likewise criminalizes improper entry by an alien "who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact …." 8 U.S.C. § 1325(a).

HB 4156 also criminalizes the act of entering or attempting to enter Oklahoma by "[a]ny alien who has been denied admission, excluded, deported, or removed, or has departed the United States while an order of exclusion, deportation, or removal is outstanding," unless (1) "[p]rior to reembarkation of the alien at a place outside the United States or application by the alien for admission from a foreign contiguous territory, the United States Attorney General has expressly consented to such alien's reapplying for admission"; or (2) "[w]ith

6

respect to an alien previously denied admission and removed, such alien established that he or she was not required to obtain such advance consent." HB 4156 § 2(D). Congress, with substantively similar exceptions, 8 U.S.C. § 1326(a)(2), also criminalizes illegal reentry of aliens who have been "denied admission," involuntarily "removed," or have departed the country "while an order of exclusion, deportation, or removal is outstanding." 8 U.S.C. § 1326(a)(1).

The district court recognized that HB 4156 effectively criminalizes the same conduct as federal law, J.A. 188, but nevertheless concluded that HB 4156 is both field preempted and conflict preempted. J.A. 196 ("[T]he Court finds that H.B. 4156 is likely field preempted."); J.A. 200 ("[T]he Court finds that H.B. 4156 is also likely conflict preempted.").

The State Defendants ably demonstrate that HB 4156 is consistent with federal immigration law and does not conflict with parallel federal provisions. Opening Brief of Defendants-Appellants (Opening Br.) at 28-43. In addition to the reasons set forth by the State Defendants, the district court's ruling should be reversed because, contrary to the district court's conclusion that Congress "left no room" for State regulation of entry and reentry, J.A. 188, 190, Congress explicitly recognized that States may permissibly play a role in determining removability under the scheme enacted by Congress.

7

As part of its statute criminalizing illegal reentry, Congress provided for sentence enhancements for certain classes of criminal aliens. *See* 8 U.S.C. § 1326(b). In that sentence enhancement provision, Congress provided: "For the purposes of this subsection, the term 'removal' includes any agreement in which an alien stipulates to removal during (or not during) a criminal trial under *either* Federal *or State law*." 8 U.S.C. § 1326(b) (emphasis added). Although this definition of "removal" is limited to "the purposes of this subsection," Congress acknowledged the practice of aliens' stipulating to their removal in State courts of law. And instead of discouraging or seeking to prevent such practices, Congress permits such stipulations to constitute the predicate "removal" for sentence enhancement purposes.

HB 4156 does not require the removal of aliens convicted under either the illegal entry or reentry provisions. HB 4156 § 2(B)-(D). Instead, it merely requires convicted aliens "to leave the state within seventy-two (72) hours following his or her conviction or release from custody, whichever comes later." *Id.* § 2(C)(1)-(2), (D). This requirement to depart the State of Oklahoma under HB 4156 does not even go as far as providing for the kind of stipulated order of removal from the United States that Congress acknowledged as permissible in 8 U.S.C. § 1326(b). If the latter is permissible, the former is, too. Congress's recognition that aliens may stipulate to their removal "during (or not during) a criminal trial" under "State law"

shows that Congress did not intend to preempt State involvement in making removal decisions as part of criminal prosecutions, much less to preempt State laws merely requiring departure from the State.

This is not to suggest that States may adopt their own removability standards. No one questions Congress's authority to establish nationwide standards of removability or that States must adhere to those federal standards. The simple fact is that, in enacting 8 U.S.C. § 1326, Congress was aware of the practice of aliens' stipulating to removal in State courts and did nothing to discourage or prevent such practices. Instead, Congress endorsed such practices, at least for the purposes of sentence enhancements under 8 U.S.C. § 1326(b). Congress's limited endorsement can hardly be said to reflect an intent to preempt State laws that punish illegal entry or reentry or that require departure from a State.

In concluding that HB 4156 is preempted by federal law, neither the district court nor the cases upon which the court relied acknowledged or addressed the fact that Congress explicitly recognized that an alien may stipulate to removal "during (or not during) a criminal trial under either Federal or State law." 8 U.S.C. § 1326(b). *See generally United States v. Texas*, 2024 U.S. Dist. LEXIS 36721, 2024 WL 861526 (W.D. Tex., Feb. 29, 2024), *stay denied*, 97 F.4th 268 (5th Cir. 2024). As the State Defendants observe, only in "'rare cases' has the Supreme Court held 'that Congress has legislated so comprehensively in a particular field

9

that it left no room for supplementary state legislation.'" Opening Br. at 29 (quoting *Kansas v. Garcia*, 589 U.S. 191, 208 (2020)) (internal quotations omitted); *id.* at 32 ("A court 'will not presume that Congress, in enacting the [Immigration and Nationality Act], intended to oust state authority to regulate ... in a manner consistent with pertinent federal laws.'") (quoting *DeCanas v. Bica*, 424 U.S. 351, 357 (1976), *superseded on other grounds as recognized by Kansas*, 589 U.S. at 195). Because Congress explicitly recognized that States may permissibly play a role in the removal process (at least with respect to stipulated removals), the district court erred in concluding that Congress left no room for supplementary regulation by the States, particularly where the State law mirrors federal law.

## CONCLUSION

For the foregoing reasons and those set forth by the State Defendants, the Court should reverse the district court and vacate the preliminary injunction.

DATED: September 25, 2024          Respectfully submitted,

/s/ Matt Crapo
Matt A. Crapo
Christopher J. Hajec
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
(202) 232-5590
mcrapo@irli.org
chajec@irli.org

Attorneys for *Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that on September 25, 2024, I electronically filed the foregoing *amicus* brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Matt Crapo
Matt A. Crapo

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with Fed. R. App. P. 29(a)(5) because, excluding those parts exempted by Fed. R. App. P. 32(f), it contains 2,236 words, as measured by Microsoft Word software, which is fewer than one-half of the 13,000 word limit for a party's principal brief under Fed. R. App. P. 32(a)(7)(B). The brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a proportionally spaced, Roman-style typeface of 14 points or more.

DATED: September 25, 2024        Respectfully submitted,

/s/ Matt Crapo
Matt A. Crapo