No. 24-6144

IN THE

# United States Court of Appeals

## FOR THE TENTH CIRCUIT

◆◆◆

UNITED STATES OF AMERICA; PADRES UNIDOS DE TULSA;
XIMENA MONSERRAT LOPEZ MENA; JORDY MADRIGAL MARTINEZ;
ANTONIO MARQUEZ; RENE DOROTEO HERNANDEZ,

*Plaintiffs-Appellees,*

—v.—

STATE OF OKLAHOMA; KEVIN STITT, in his official capacity as Governor of
Oklahoma; GENTNER DRUMMOND, in his official capacity as Attorney General of
Oklahoma; OKLAHOMA DEPARTMENT OF PUBLIC SAFETY; TIM TIPTON, in his
official capacity as Commissioner of Oklahoma Department of Public Safety,

*Defendants-Appellants,*

—and—

VICKI BEHENNA, in her official capacity as District Attorney of
Oklahoma County; STEVE KUNZWEILER, in his official capacity
as District Attorney of Tulsa County,

*Defendants.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
HONORABLE BERNARD M. JONES
NO. 5:24-CV-00511-J

---

### BRIEF FOR *AMICUS CURIAE* UNITED MEXICAN STATES IN SUPPORT OF PLAINTIFFS-APPELLEES

---

JOSHUA MATZ
HECKER FINK LLP
1050 K Street NW, Suite 1040
Washington, D.C. 20001
(212) 763-0883

CHRISTOPHER MOREL
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883

DONYA KHADEM
AMIT JAIN
HOWARD UNIVERSITY SCHOOL OF LAW
  CIVIL RIGHTS CLINIC
2900 Van Ness Street NW
Washington, D.C. 20008
(202) 806-0533
donyaanis.khadem@howard.edu

*Attorneys for Amicus Curiae*

November 27, 2024

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..............................................ii

INTEREST OF AMICUS CURIAE .....................................1

SUMMARY OF ARGUMENT............................................2

ARGUMENT .................................................................5

I.   H.B. 4156 Threatens the Longstanding and Mutually
     Beneficial Relationship Between Mexico and the
     United States.....................................................5

     A.  H.B. 4156 Would Frustrate Bilateral Relations by
         Harming Mexican Nationals and People of
         Mexican Descent in Oklahoma .............................6

     B.  H.B. 4156 Would Frustrate Efforts Between
         Mexico and the United States to Achieve a
         Uniform Legal Migration Framework and Border
         Management...................................................13

     C.  H.B. 4156 Would Hinder Trade and Tourism
         between the United States and Mexico ..................17

     D.  H.B. 4156 Would Prevent the United States from
         Speaking with One Uniform Voice in
         International Affairs........................................20

CONCLUSION...........................................................24

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*American Ins. Ass'n v. Garamendi,*
    539 U.S. 396 (2003) ................................................... 20

*Arizona v. United States,*
    567 U.S. 387 (2012) ........................... 2, 4, 7, 10, 17, 20, 23

*Brown v. City of Oneonta,*
    221 F.3d 329 (2d Cir. 2000) ......................................... 12

*Crosby v. Nat'l Foreign Trade Council,*
    530 U.S. 363 (2000) ............................................... 6, 22

*Hines v. Davidowitz,*
    312 U.S. 52 (1941) ........................................... 7, 10, 13

*Kansas v. Garcia,*
    589 U.S. 191 (2020) .................................................... 8

*Munaf v. Geren,*
    553 U.S. 674 (2008) ................................................... 20

*United States v. Iowa,*
    -- F. Supp. 3d --, 2024 WL 3035430 (S.D. Iowa June 17,
    2024) ................................................................... 22

*United States v. Texas,*
    97 F.4th 268 (5th Cir. 2024) ......................................... 22

*Zadvydas v. Davis,*
    533 U.S. 678 (2001) ................................................... 21

*Zivotofsky ex rel. Zivotofsky v. Kerry,*
    576 U.S. 1 (2015) ..................................................... 20

**Statutes**

H.B. 4156, § 2(A)-(D) (codified at Okla. Stat., tit. 21,
    § 1795(A)-(D)) ......................................................... 7

## Constitutional Provisions

Constitución Política de los Estados Unidos Mexicanos,
Oct. 8, 2013, Tit. II, ch. I, art. 40 ................................. 23

## Other Authorities

Adam Isacson, *Weekly U.S.-Mexico Border Update: Asylum
Rule, Mexico Data, CBP One, 2024 Campaign, Migrant
Deaths*, WOLA (Sept. 6, 2024),
https://www.wola.org/2024/09/weekly-u-s-mexico-border-
update-asylum-rule-mexico-data-cbp-one-2024-campaign-
migrant-deaths/ ...................................................... 15

Alexia Aston, *Law Enforcement Organizations Speak Out
Against Oklahoma's HB 4156*, Oklahoman
(May 15, 2024),
https://www.oklahoman.com/story/news/2024/05/15/oklah
oma-immigration-bill-police-organizations-react-to-hb-
4156/73698727007/ ................................................ 9, 12

Bella Casey & Luisa Clausen, *House Bill 4156 Instills Fear
in Tulsa Immigrant Community, Reluctance to Report
Crimes*, Tulsa World (Aug. 11, 2024),
https://tulsaworld.com/news/local/house-bill-4156-
instills-fear-in-tulsa-immigrant-community-reluctance-
to-report-crimes/article_b1e970f0-5369-11ef-b765-
57b14dadaa4c.html ...................................................... 11

Bella Casey & Luisa Clausen, *Oklahoma Law Targeting
Immigrants Puts Politics over Policy, Tulsa County
Sheriff Says*, Tulsa World (Aug. 12, 2024),
https://tulsaworld.com/news/local/oklahoma-law-
targeting-immigrants-puts-politics-over-policy-tulsa-
county-sheriff-says/article_6c235572-5369-11ef-a3c2-
2b96c32ecee3.html...................................................... 9

Comunicado, Gobierno De México, *Defensa de Soberanía Nacional y Protección a la Comunidad Mexicana en el Exterior, Ejes Prioritarios del Canciller Designado De la Fuente* (Oct. 8, 2024), https://www.gob.mx/sre/prensa/defensa-de-la-soberania-nacional-y-proteccion-a-la-comunidad-mexicana-en-el-exterior-ejes-prioritarios-del-canciller-designado-de-la-fuente?state=published .................................................... 7

Embassy of Mexico in the United States, *Mexico's Trade in Oklahoma: Edition 2024*, https://embamex.sre.gob.mx/eua/images/stories/2024/Economicos/tradebystate/Oklahoma.pdf ........................... 18, 19

Embassy of Mexico in the United States, *Tourism Statistics (January - August 2021)*, https://embamex.sre.gob.mx/eua/index.php/en/2016-04-09-20-40-51/tourism/1762-tourism-statistics-2 ................... 18

Int'l Trade Admin., *Mexico – Country Commercial Guide: Travel and Tourism* (Nov. 5, 2023), https://www.trade.gov/country-commercial-guides/mexico-travel-and-tourism ................................... 19

Jasmine Garsd, *In Attempting to Curtail Immigration, The U.S. Looks for Allies in Latin America*, NPR (June 10, 2024), https://www.npr.org/2024/06/10/g-s1-3467/asylum-immigration-biden-sheinbaum-bukele-border ................................................................... 14

Jeanne Batalova*, Frequently Requested Statistics on Immigrants and Immigration in the United States*, Migration Pol'y Inst. (Mar. 13, 2024), https://www.migrationpolicy.org/article/frequently-requested-statistics-immigrants-and-immigration-united-states-2024 ....................................................... 8

Kevin Canfield, *Immigration Law Could Deter Victims from Reporting Crime, Tulsa Mayor Worries*, Tulsa World (Apr. 24, 2024), https://tulsaworld.com/news/local/government-politics/immigration-law-could-deter-victims-from-reporting-crime-tulsa-mayor-worries/article_d83c8036-01ba-11ef-b6f6-8b003097b947.html ............................... 11

Lionel Ramos, *Federal Judge Stops Oklahoma Immigration Law from Taking Effect, Latino Community Reacts*, KOSU (July 2, 2024), https://tulsaworld.com/news/local/government-politics/immigration-law-could-deter-victims-from-reporting-crime-tulsa-mayor-worries/article_d83c8036-01ba-11ef-b6f6-8b003097b947.html ................................... 9

M. Angeles Villarreal, *U.S.-Mexico Economic Relations: Trends, Issues, and Implications*, Congressional Research Service (June 25, 2020), https://crsreports.congress.gov/product/pdf/RL/RL32934 ...... 17

M. Angeles Villarreal, *U.S.-Mexico Trade Relations*, Congressional Research Service (Sept. 29, 2022), https://crsreports.congress.gov/product/pdf/IF/IF11175/3 ..... 18

Office of the Spokesperson, U.S. Dep't of State, *Joint Statement: U.S.-Mexico High Level Security Dialogue 2023* (Oct. 13, 2023), https://www.state.gov/joint-statement-u-s-mexico-high-level-security-dialogue-2023/ ...................................... 16

Press Release, Dep't of Justice, *Fact Sheet: Initiative to Combat Transnational Human Smuggling and Trafficking Networks Marks Third Anniversary* (June 11, 2024), https://www.justice.gov/opa/pr/fact-sheet-initiative-combat-transnational-human-smuggling-and-trafficking-networks-marks ................................................... 15, 16

Press Release, Gobierno de México, *The Consulate of Mexico in Oklahoma City Increases Its Consular Services, Assistance and Protection After Passage of HB 4156* (Apr. 30, 2024), https://www.gob.mx/sre/prensa/the-consulate-of-mexico-in-oklahoma-city-increases-its-consular-services-assistance-and-protection-after-passage-of-hb-4156?idiom=en.......................................................12, 13

Press Release, League of United Latin Am. Citizens, *LULAC Denounces Oklahoma's Anti-Immigrant and Unconstitutional HB4156* (May 1, 2024), https://lulac.org/news/pr/LULAC_DENOUNCES_OKLAHOMAS_ANTI_IMMIGRANT_AND_UNCONSTITUTIONAL_HB4156 ....................................... 9

Stef W. Kight, *Mexico Agrees to Accept Non-Mexican Migrants Rejected by U.S.*, Axios (May 3, 2023), https://www.axios.com/2023/05/03/biden-mexico-migration-border-deportation-title-42 ............................. 14

Tanvi Misra, *The Fatal Flaw in The Border Patrol's Rescue Program*, High Country News (Sept. 1, 2024), https://www.hcn.org/issues/56-9/the-fatal-flaw-in-the-border-patrols-rescue-program/ ....................................... 17

The Federalist No. 42 (J. Cooke ed. 1961)............................. 21

U.S. Dep't of State, *U.S. Relations with Mexico - Bilateral Relations Fact Sheet* (Sept. 16, 2024), https://www.state.gov/u-s-relations-with-mexico/............14, 18

## INTEREST OF *AMICUS CURIAE*

*Amicus curiae* the United Mexican States ("Mexico") is a constitutional federal republic that shares a nearly 2,000-mile-long border and over 40 ports of entry with the United States of America. For the past two centuries, the United States and Mexico have cultivated strong diplomatic ties. Like other analogous state bills that federal courts have concluded were preempted by federal law, H.B. 4156 puts this productive and longstanding relationship at risk. H.B. 4156 threatens to severely and adversely affect the Mexican community in Oklahoma, precipitating discrimination and diminishing trust in law enforcement; to frustrate bilateral efforts to better secure and manage the United States-Mexico border; to hinder trade, tourism, and travel between two of the world's closest sovereign economic partners; and to fracture the United States' voice on the global stage, undermining its reliability as a negotiating partner. Mexico respectfully submits this brief to share its grave concerns over H.B. 4156 and to illustrate some of the tangible

consequences for international relations when states unilaterally intrude on core federal powers.[1]

## SUMMARY OF ARGUMENT

The United States Supreme Court has long held that the federal government has the exclusive power to regulate immigration. *See, e.g.*, *Arizona v. United States*, 567 U.S. 387, 394-95 (2012) (collecting cases spanning more than a century). This power is uniquely federal, the Court has explained, because immigration policy is intertwined with international relations and can, therefore, "affect trade, investment, tourism, and diplomatic relations" between the United States and other sovereigns. *Id.* at 395. Oklahoma's H.B. 4156 unlawfully intrudes upon federal immigration power—with predictably adverse consequences. Enforcement of H.B. 4156 would undermine diplomatic relations between Mexico and the United States in four significant ways.

*First*, enforcement of H.B. 4156 will result in discrimination against Mexican nationals, deter the Mexican community in Oklahoma from

---

[1] All parties consent to the filing of this brief. No party or party's counsel authored this brief in any part, and no person or entity, other than Mexico and its counsel, contributed money intended to fund the preparation or submission of this brief.

reporting crimes, and require Mexico to expend resources in aid of its citizens. Mexico has a significant interest in the rights and safety of its citizens living and traveling in the United States. More broadly, too, Mexico is committed to ensuring that people of Mexican origin are treated with dignity while in Oklahoma. Enforcement of H.B. 4156 will push law enforcement to target Mexican nationals and their families and subject them to harassment, detention, and criminal prosecution. Indeed, the mere threat of H.B. 4156 has already led to fear and uncertainty among the Mexican community in Oklahoma—fomenting mistrust in law enforcement and discouraging Oklahoma's Mexican diaspora from reporting serious crimes to the police. To protect its nationals and their families in the face of H.B. 4156, Mexico has already expended and must continue to expend limited diplomatic and consular resources.

*Second*, enforcement of H.B. 4156 would impede ongoing, close bilateral collaboration between Mexico and the federal government in migration, border, and security matters. Mexico and the United States have shared interests in regulating migration. Both countries have frequently worked together to address difficult issues relating to border control and security. For example, Mexico and the United States recently

3

committed to the Bicentennial Framework for Security, Public Health, and Safe Communities, which establishes a comprehensive, long-term framework that guides joint actions in security, health, and development for both countries. Enforcement of H.B. 4156 could negatively impact these joint efforts to regulate migration, combat organized crime, and thwart trafficking of fentanyl and other synthetic drugs.

*Third*, enforcement of H.B. 4156 would hinder trade and tourism between Mexico and the United States. Over the past several decades, Mexico and the United States have cultivated a strong economic relationship through sustained trade and tourism. Just last year, Mexico became the United States' number one trading partner. H.B. 4156 will set back these mutually beneficial efforts by making Mexican businesses and nationals less willing to trade with or visit the United States.

*Finally*, enforcement of H.B. 4156 would open the door to an unworkable system in which Mexico would be forced to communicate with individual states rather than the United States. As the Supreme Court has recognized, foreign powers "must be able to confer . . . with one national sovereign, not the 50 separate [s]tates" when liaising with the United States. *Arizona*, 567 U.S. at 395. In contrast, H.B. 4156 would

prevent the United States from speaking with one voice with respect to significant foreign policy matters. For all these reasons, this Court should affirm.

## ARGUMENT

### I. H.B. 4156 Threatens the Longstanding and Mutually Beneficial Relationship Between Mexico and the United States

Mexico and the United States regularly collaborate on a wide array of matters of international importance, including the safety of their citizens abroad, immigration policy, law enforcement, border security, trade, and tourism. Each of these issues independently and significantly impacts diplomatic relations. Mexico must carefully weigh several competing considerations when advancing its interests and values through its foreign policy—as must the United States.

If allowed to take effect, however, H.B. 4156 will unilaterally affect relations between the United States and Mexico on several of these issues of bilateral importance, including the treatment of Mexican nationals and their relatives in Oklahoma; effective management of the border between Mexico and the United States; and ongoing trade, tourism, and travel between the two countries. Moreover, if the Court were to allow

H.B. 4156 to go into effect, Mexico would have no choice but to negotiate its foreign policy with many sovereigns rather than one.

All of this goes to illustrate that H.B. 4156 intrudes upon core federal powers under controlling precedent. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 382 n.18, 385 (2000) (considering "statements of foreign powers," including in amicus briefs, as "competent and direct evidence of the frustration of [federal] objectives by" a state enactment). The preliminary injunction should be affirmed.

## A. H.B. 4156 Would Frustrate Bilateral Relations by Harming Mexican Nationals and People of Mexican Descent in Oklahoma

H.B. 4156, an immigration-focused criminal statute, threatens the diplomatic relationship between Mexico and the United States by harming and targeting Mexican nationals in Oklahoma and, in turn, requiring Mexico to expend consular resources to combat the statute's consequences.

As the Supreme Court recognized decades ago, "[o]ne of the most important and delicate of all international relationships, recognized immemorially as a responsibility of government, has to do with the protection of the just rights of a country's own nationals when those

nationals are in another country." *Hines v. Davidowitz*, 312 U.S. 52, 64 (1941); *accord Arizona*, 567 U.S. at 395. That remains true today: "[D]uring this administration, the priority of foreign policy will be to . . . safeguard the security and human rights of the Mexican community abroad."[2]

H.B. 4156 directly threatens this central aspect of the relationship between Mexico and the United States. H.B. 4156 criminalizes mere presence within Oklahoma for "any person not a citizen or national of the United States" who has not "first obtained legal authorization to enter the United States" or who has been removed. H.B. 4156, § 2(A)-(D) (codified at Okla. Stat., tit. 21, § 1795(A)-(D)). In doing so, H.B. 4156 poses "distinct, unusual and extraordinary burdens and obligations upon" noncitizens. *Hines*, 312 U.S. at 65. That distinguishes the statute from "generally applicable criminal laws" that do not target or impact noncitizens in particular, Opening Brief of Defendants-Appellants

---

[2] Comunicado, Gobierno De México, *Defensa de Soberanía Nacional y Protección a la Comunidad Mexicana en el Exterior, Ejes Prioritarios del Canciller Designado De la Fuente* (Oct. 8, 2024), https://www.gob.mx/sre/prensa/defensa-de-la-soberania-nacional-y-proteccion-a-la-comunidad-mexicana-en-el-exterior-ejes-prioritarios-del-canciller-designado-de-la-fuente?state=published.

("Oklahoma Br.") at 42, including (but not limited to) identity-theft and false-information statutes, *see Kansas v. Garcia*, 589 U.S. 191, 198 (2020).

Because this law solely targets noncitizens, it is impossible to credit any claim that it will be enforced in race-neutral ways—or in a manner that does not impose burdens, discrimination, and injury on the Mexican diaspora. In 2022, 44 percent of U.S. immigrants were Hispanic; Mexican immigrants, in particular, constituted 23 percent of the total U.S. immigrant population.[3] Because so many immigrants in the United States are of Mexican or Central American descent, H.B. 4156 would be very difficult to enforce without racially profiling Hispanic individuals (including Mexican nationals and their families)—regardless of their immigration status. In that real sense, the law will injure not only noncitizens, but the whole Mexican diaspora.

This is far from theoretical. Oklahoma law enforcement agencies, including the Oklahoma Association of Chiefs of Police, warned that H.B.

---

[3] *See* Jeanne Batalova, *Frequently Requested Statistics on Immigrants and Immigration in the United States*, Migration Pol'y Inst. (Mar. 13, 2024), https://www.migrationpolicy.org/article/frequently-requested-statistics-immigrants-and-immigration-united-states-2024.

4156 would pose "legal challenges in . . . anti-racial profiling."[4] The Tulsa County Sheriff similarly opined that the statute "would push us toward racial profiling, because how else are you going to enforce this?"[5] Civil liberties groups also denounced H.B. 4156 for "open[ing] the door to racial profiling, increasing the likelihood of unjust targeting of specific communities based on ethnicity or appearance."[6] It is therefore unsurprising that, after the Oklahoma legislature passed H.B. 4156, news sources reported that Oklahoma residents of Mexican and Central American descent experienced a "spike in worry and fear."[7] Simply put,

---

[4] Alexia Aston, *Law Enforcement Organizations Speak Out Against Oklahoma's HB 4156*, Oklahoman (May 15, 2024), https://www.oklahoman.com/story/news/2024/05/15/oklahoma-immigration-bill-police-organizations-react-to-hb-4156/73698727007.

[5] Bella Casey & Luisa Clausen, *Oklahoma Law Targeting Immigrants Puts Politics over Policy, Tulsa County Sheriff Says*, Tulsa World (Aug. 12, 2024), https://tulsaworld.com/news/local/oklahoma-law-targeting-immigrants-puts-politics-over-policy-tulsa-county-sheriff-says/article_6c235572-5369-11ef-a3c2-2b96c32ecee3.html.

[6] Press Release, League of United Latin Am. Citizens, *LULAC Denounces Oklahoma's Anti-Immigrant and Unconstitutional HB4156* (May 1, 2024), https://lulac.org/news/pr/LULAC_DENOUNCES_OKLAHOMAS_ANTI_IMMIGRANT_AND_UNCONSTITUTIONAL_HB4156.

[7] Lionel Ramos, *Federal Judge Stops Oklahoma Immigration Law from Taking Effect, Latino Community Reacts*, KOSU (July 2, 2024), https://www.kosu.org/politics/2024-07-02/federal-judge-stops-oklahoma-immigration-law-from-taking-effect-latino-community-reacts; *see id.*

H.B. 4156 risks burdening Mexican citizens with "indiscriminate and repeated interception and interrogation" by law enforcement, *Hines*, 312 U.S. at 66, posing fundamental concerns about the "status, safety, and security of [Mexican nationals] in the United States," *Arizona*, 567 U.S. at 395.

And this is not the only way in which H.B. 4156 threatens to undermine the safety and wellness of Oklahoma's Mexican community. Independently, H.B. 4156 would deter the most vulnerable individuals in these communities from even *reporting* crimes because it places unauthorized immigrants, including those who are victims of serious crimes such as human trafficking and domestic violence, at risk of arrest and detention by state authorities seeking to enforce H.B. 4156. Human traffickers and domestic abusers could even leverage H.B. 4156 to target Mexican nationals, who may be afraid to report the abuse to state officials out of fear of arrest.

Consider the story of Lilu, a longtime Oklahoma resident who came to the United States with her parents when she was only two years old.

---

("[W]hen the court released its decision to temporarily pause the law, [a Mexican woman living in Oklahoma City] and many others were able to breathe again.").

As an adult, Lilu experienced domestic violence in a romantic relationship. But she was afraid to report the abuse, and be deported, so she felt she had little choice but to ignore the crime and let the abuse continue.[8] Even when Lilu finally reported her abuser, she continued to worry, because she "didn't know what was going to happen to [her]" or "to [her] family" as a result of her decision.[9] H.B. 4156 only worsened her fears, making it "scarier and more complicated to find help."[10]

Anticipating these significant concerns, many Oklahoma leaders—including G.T. Bynum, the mayor of Tulsa—criticized H.B. 4156. As Mayor Bynum explained: "If a child is molested, I want their parents to call the Tulsa Police Department so we can get the molester behind bars—regardless of the citizenship status of the parents reporting the crime."[11] State law enforcement leaders agreed that the statute would

---

[8] Bella Casey & Luisa Clausen, *House Bill 4156 Instills Fear in Tulsa Immigrant Community, Reluctance to Report Crimes*, Tulsa World (Aug. 11, 2024), https://tulsaworld.com/news/local/house-bill-4156-instills-fear-in-tulsa-immigrant-community-reluctance-to-report-crimes/article_b1e970f0-5369-11ef-b765-57b14dadaa4c.html.

[9] *Id.*

[10] *Id.*

[11] Kevin Canfield, *Immigration Law Could Deter Victims from Reporting Crime, Tulsa Mayor Worries*, Tulsa World (Apr. 24, 2024), https://tulsaworld.com/news/local/government-politics/immigration-

risk "deteriorat[ing] public trust in law enforcement in already vulnerable communities."[12] *See, e.g.*, *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000) ("Law enforcement officials should always be cognizant of the impressions they leave on a community, lest distrust of law enforcement undermine its effectiveness.").

To address the fear and uncertainty caused by H.B. 4156, Mexico must divert diplomatic attention and resources from other important issues such as security, trade, and tourism. In anticipation of H.B. 4156, the Consulate of Mexico in Oklahoma City began expanding its "consular services, assistance, and protection" to support Mexican nationals in Oklahoma.[13] Specifically, the Consulate "increased its communication with local authorities at all levels, and with human and civil rights groups and community organizations," and bolstered its community

---

law-could-deter-victims-from-reporting-crime-tulsa-mayor-worries/article_d83c8036-01ba-11ef-b6f6-8b003097b947.html.

[12] Aston, *supra* note 4.

[13] Press Release, Gobierno de México, *The Consulate of Mexico in Oklahoma City Increases Its Consular Services, Assistance and Protection After Passage of HB 4156* (Apr. 30, 2024), https://www.gob.mx/sre/prensa/the-consulate-of-mexico-in-oklahoma-city-increases-its-consular-services-assistance-and-protection-after-passage-of-hb-4156?idiom=en.

outreach programs.[14] These actions tangibly reflect Mexico's focus on protecting the safety and wellness of the Mexican diaspora living in Oklahoma. *See Hines*, 312 U.S. at 64. And every diplomatic resource that Mexico must devote toward ensuring its nationals in Oklahoma are safe and free from discrimination takes away from other issues of bilateral significance.

Because H.B. 4156's focus on unauthorized immigrants harms Oklahoma's Mexican diaspora and requires consular investments in response, it bears directly upon the relationship between Mexico and the United States and is preempted.

> **B.     H.B. 4156 Would Frustrate Efforts Between Mexico and the United States to Achieve a Uniform Legal Migration Framework and Border Management**

H.B. 4156 also threatens diplomatic relations between Mexico and the United States by undermining collaborative and ongoing efforts towards a uniform legal framework for migration and border management. Any meaningful strides toward these ends require that the two countries work together as unified wholes. To date, the two nations have embarked on many such collaborative efforts across

---

[14] *Id.*

administrations of both parties—efforts that are vital to the United States, whose "immigration policy is toothless without Mexican cooperation."[15] Likewise, such collaboration is vital to Mexico's ability to manage its own borders. Enforcement of H.B. 4156 would undermine effective collaboration by chilling the exchange of vital information— making a complex situation more dangerous.

In recent years, Mexico has cooperated with the United States to increase security at the border, reduce the number of individuals crossing unlawfully, address the root causes of migration, and expand legal pathways.[16] For instance, last year, Mexico agreed to accept certain individuals from Venezuela, Nicaragua, Haiti, and Cuba who were removed from the United States.[17] In addition, Mexico has expanded refugee settlements, temporary work opportunities for immigrants, and

---

[15] Jasmine Garsd, *In Attempting to Curtail Immigration, The U.S. Looks for Allies in Latin America*, NPR (June 10, 2024), https://www.npr.org/2024/06/10/g-s1-3467/asylum-immigration-biden-sheinbaum-bukele-border.

[16] *See* U.S. Dep't of State, *U.S. Relations with Mexico – Bilateral Relations Fact Sheet* (Sept. 16, 2024), https://www.state.gov/u-s-relations-with-mexico/.

[17] Stef W. Kight, *Mexico Agrees to Accept Non-Mexican Migrants Rejected by U.S.*, Axios (May 3, 2023), https://www.axios.com/2023/05/03/biden-mexico-migration-border-deportation-title-42.

its asylum program. Mexico has repeatedly reaffirmed its commitments to the United States. Indeed, in July 2024, "for the first time, Mexico's reported migrant encounters exceeded the United States' encounters at the U.S.-Mexico border."[18]

Bilateral cooperation has also proven effective in combating crime and dismantling transnational criminal organizations. For example, Joint Task Force Alpha, a United States law enforcement task force, has secured more than 300 "domestic and international arrests, including against leaders, organizers, and significant facilitators" of human trafficking; more than 240 U.S. convictions; and "[m]ultiple indictments and precedent setting extraditions of foreign leadership targets."[19] A significant reason for Joint Task Force Alpha's success is its "increased

---

[18] Adam Isacson, *Weekly U.S.-Mexico Border Update: Asylum Rule, Mexico Data, CBP One, 2024 Campaign, Migrant Deaths*, WOLA (Sept. 6, 2024), https://www.wola.org/2024/09/weekly-u-s-mexico-border-update-asylum-rule-mexico-data-cbp-one-2024-campaign-migrant-deaths/.

[19] Press Release, Dep't of Justice, *Fact Sheet: Initiative to Combat Transnational Human Smuggling and Trafficking Networks Marks Third Anniversary* (June 11, 2024), https://www.justice.gov/opa/pr/fact-sheet-initiative-combat-transnational-human-smuggling-and-trafficking-networks-marks.

coordination and collaboration . . . with foreign law enforcement partners," including Mexico.[20]

In addition, the United States and Mexico collaborate on the Bicentennial Framework for Security, Public Health, and Safe Communities.[21] As part of the Bicentennial Framework, both countries have agreed to "intensify [their] efforts to combat illicit drug trafficking, particularly synthetic drugs such as fentanyl and their chemical precursors; the trafficking of illicit firearms; [and] human trafficking and smuggling," among other criminal activities.[22]

H.B. 4156 undermines these joint efforts. By targeting immigrants and causing the Mexican community in Oklahoma to feel unsafe reporting crimes to law enforcement, and by requiring the state-level diversion of Mexican resources and diplomatic personnel, H.B. 4156 inhibits the ability of the United States and Mexico to counter smugglers and traffickers who exploit migrants. Law enforcement agents rely on

---

[20] *Id.*

[21] Office of the Spokesperson, U.S. Dep't of State, *Joint Statement: U.S.-Mexico High Level Security Dialogue 2023* (Oct. 13, 2023), https://www.state.gov/joint-statement-u-s-mexico-high-level-security-dialogue-2023/.

[22] *Id.*

migrants and their families to "provide firsthand information on smugglers . . . which could be used to capture and prosecute the cartels behind the operation."[23] Should an immigrant in Oklahoma have such information, however, fear of prosecution under H.B. 4156 would discourage them from sharing it with law enforcement. *See supra* Part I.A. That, in turn, will undermine collaboration between Mexico and the United States to regulate migration and combat crime.

### C.  H.B. 4156 Would Hinder Trade and Tourism between the United States and Mexico

Mexico is also deeply concerned about the negative impact H.B. 4156 will have on Mexico's economic relations with the United States. As the Supreme Court recognized in *Arizona*, "[i]mmigration policy can affect trade, investment, tourism, and diplomatic relations." *Arizona*, 567 U.S. at 395. For decades, Mexico and the United States have established and renegotiated agreements to strengthen economic and cultural ties to the benefit of both countries.[24] As a result of these efforts, in 2023, Mexico

---

[23] Tanvi Misra, *The Fatal Flaw in The Border Patrol's Rescue Program*, High Country News (Sept. 1, 2024), https://www.hcn.org/issues/56-9/the-fatal-flaw-in-the-border-patrols-rescue-program/.

[24] *See* M. Angeles Villarreal, *U.S.-Mexico Economic Relations: Trends, Issues, and Implications*, Congressional Research Service 1 (June 25, 2020), https://crsreports.congress.gov/product/pdf/RL/RL32934.

became the United States' number one trading partner, with trade between the two countries totaling roughly $800 billion.[25] In recent years, approximately 80% of Mexico's exports have been bound for the United States.[26] Mexico's imports from the United States, meanwhile, totaled over $475 billion in 2023 alone.[27]

In addition to trade and investment, both Mexico and the United States benefit from tourism and travel. Every day, hundreds of thousands of people cross the border legally for work, family, or leisure. As of September 2024, Mexico is the top foreign travel destination for travelers of the United States.[28] These U.S. tourists account for over half of Mexico's international visitors, supporting countless jobs in Mexico.[29]

---

[25] *See* U.S. Dep't of State, *supra* note 16.

[26] M. Angeles Villarreal, *U.S.-Mexico Trade Relations*, Congressional Research Service 1 (Sept. 29, 2022), https://crsreports.congress.gov/product/pdf/IF/IF11175/3.

[27] *See* Embassy of Mexico in the United States, *Mexico's Trade in Oklahoma: Edition 2024*, https://embamex.sre.gob.mx/eua/images/stories/2024/Economicos/tradebystate/Oklahoma.pdf.

[28] *See* U.S. Dep't of State, *supra* note 16.

[29] *See* Embassy of Mexico in the United States, *Tourism Statistics (January – August 2021)*, https://embamex.sre.gob.mx/eua/index.php/en/2016-04-09-20-40-51/tourism/1762-tourism-statistics-2 (noting that of the 20.6 million international visitors who arrived in Mexico by air during 2022, 63% came from the United States).

Similarly, 12.5 million Mexicans traveled to the United States in 2022, comprising nearly a quarter of total foreign arrivals and making Mexico the second-largest source of international visitors.[30] Mexican tourists spent $19.2 billion in the United States in 2022 alone, helping to sustain innumerable American businesses and jobs.[31]

The deeply interconnected nature of these two economies benefits Oklahoma directly. Mexico is Oklahoma's second-largest export market and third-largest international trade partner, accounting for approximately 7% of the state's trade—and supporting over 60,000 jobs in the state.[32]

H.B. 4156 threatens to impede bilateral efforts to develop and enhance robust trade and commercial relationships between Mexico and the United States. Enforcement of H.B. 4156 would discourage Mexican businesses from trading with U.S. companies, particularly in Oklahoma, leading to losses in revenues and jobs and setting back longstanding

---

[30] *See* Int'l Trade Admin., *Mexico – Country Commercial Guide: Travel and Tourism* (Nov. 5, 2023), https://www.trade.gov/country-commercial-guides/mexico-travel-and-tourism.

[31] *See id.*

[32] *See* Embassy of Mexico in the United States, *supra* note 27.

diplomatic efforts. In addition, enforcement of H.B. 4156 would deter

Mexican nationals, regardless of their immigration status, from visiting

Oklahoma for work or leisure due to fears of racial profiling and unlawful

detention. As a result, American tourists might similarly be deterred

from visiting Mexico. *See Arizona*, 567 U.S. at 395. By discouraging trade

and tourism and impeding economic collaboration at the federal level,

H.B. 4156 unilaterally jeopardizes the economic and cultural relationship

between two great nations. *See id.*

### D.    H.B. 4156 Would Prevent the United States from Speaking with One Uniform Voice in International Affairs

Oklahoma claims that it enacted H.B. 4156 solely out of concern for

"its own borders." Oklahoma Br. 35. But Oklahoma ignores settled

precedent underscoring the importance of "the National Government's

ability to speak with 'one voice'" in international affairs. *American Ins.*

*Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003) (foreign commerce) (quoting

*Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 449 (1979)); *see*

*also, e.g.*, *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 14 (2015)

(recognition of foreign nations and governments); *Arizona*, 567 U.S. at

409 (noncitizen removal); *Munaf v. Geren*, 553 U.S. 674, 702 (2008)

(transfer of individuals to foreign custody for criminal prosecution); *Zadvydas v. Davis*, 533 U.S. 678, 700 (2001) (detention following a final removal order). As James Madison stated centuries ago: "If we are to be one nation in any respect, it clearly ought to be in respect to other nations." The Federalist No. 42, p. 279 (J. Cooke ed. 1961).

The Framers of the U.S. Constitution embraced this principle, and the Supreme Court has repeatedly enforced it, because it benefits the United States. But it benefits other sovereign nations, too. Mexico is aware that immigration policy is a contested political issue in the United States. Mexico respects the sovereignty of the United States and its internal political processes and has no intention of pressing its thumb on these domestic debates. But when Mexico engages with the United States—whether on matters of immigration policy, border security, economics, or otherwise—it relies on the understanding that it has a coherent negotiating partner.

That cannot be true if individual states can enforce laws that intrude upon foreign relations. If this Court were to permit H.B. 4156 to go into effect, no matter what the U.S. federal government's foreign relations priorities were, any dissenting state could second-guess the

federal government's foreign policy decisions and pass legislation advancing its own goals. *See Crosby*, 530 U.S. at 377 (explaining that state enactments that intrude upon foreign relations reduce the president's "diplomatic leverage").

Indeed, in recent years, several states have enacted migration-related laws—including at least two others that courts enjoined in 2024 alone.[33] Allowing states to legislate in this manner would threaten Mexico's ability to negotiate and maintain a working relationship with the United States. Mexico would have to balance the interests of individual states, each with their own conflicting political environments and goals. State or local officials could engage in conduct (or misconduct) that raises serious foreign relations concerns, yet the United States federal government would be powerless to act, requiring Mexico to address its concerns with each individual state. Not only would Mexico's resources be strained, but the voice of the United States would be drowned out by the clamor of its many individual constituents.

---

[33] *See United States v. Texas*, 97 F.4th 268 (5th Cir. 2024) (declining to stay preliminary injunction against enforcement of Texas law); *United States v. Iowa*, -- F. Supp. 3d --, 2024 WL 3035430 (S.D. Iowa June 17, 2024) (preliminarily enjoining enforcement of Iowa law).

While many in the United States and across the globe know the United Mexican States as "Mexico," that shorthand risks papering over the rich diversity of the 31 states that make up our constitutional republic.[34] Much like the 50 United States, each of Mexico's 31 states has unique problems, politics, and people. Nevertheless, Mexico recognizes the chaos and confusion that would ensue if the United States was forced to negotiate with each of those states individually on matters of foreign relations. And so, in matters of foreign affairs, the United Mexican States speaks with the United States of America with one voice—and it, like other nations, expects that the United States of America will respond in kind.

Because it remains just as true today "that foreign countries concerned about the status, safety, and security of their nationals in the United States must be able to confer and communicate on this subject with one national sovereign, not the 50 separate States," *Arizona*, 567 U.S. at 395, Mexico respectfully asks that this Court affirm the District Court's preliminary injunction.

---

[34] *See* Constitución Política de los Estados Unidos Mexicanos, Oct. 8, 2013, Tit. II, ch. I, art. 40.

## CONCLUSION

For the foregoing reasons, the Court should affirm the District Court's order granting a preliminary injunction.

Dated: November 27, 2024            Respectfully submitted,

*/s/ Donya Khadem*
Donya Khadem
Amit Jain
HOWARD UNIVERSITY SCHOOL OF
    LAW CIVIL RIGHTS CLINIC
2900 Van Ness Street NW
Washington, D.C. 20008
(202) 806-0533
donyaanis.khadem@howard.edu

Joshua Matz
HECKER FINK LLP
1050 K Street NW, Suite 1040
Washington, D.C. 20001
(212) 763-0883

Christopher Morel
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883

## CERTIFICATE OF COMPLIANCE

1. This amicus brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 4,200 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B), according to the word count function of Microsoft Word.

2. This amicus brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the type-style requirements of Fed. R. App. P. 32(a)(6), and 10th Cir. R. 32 because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

3. All privacy redactions have been made in compliance with 10th Cir. R. 25.5.

4. This electronic filing is identical to any hard copies that will be submitted.

*/s/ Donya Khadem*
Donya Khadem

**CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Donya Khadem*
Donya Khadem